UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OLLIE CARRUTHERS, et al.,

    Plaintiffs,

vs.                                              Case No. 76-CIV-WMH

RON COCHRAN, as Sheriff of Broward County,
GERALD F. THOMPSON, SYLVIA POITIER,
JOHN P. HART, SCOTT I. COWAN,
LORI N. PARRISH, SUZANNE N. GUNZBURGER,
and JOHN E. RODSTROM, in their capacities as
County Commissioners of Broward County, and
HENRY L. TEMPLETON, as Director of Department
of Corrections and Rehabilitation,

    Defendants.

_____

**STIPULATION FOR ENTRY OF CONSENT DECREE**



PLAINTIFF'S EXHIBIT C

## STIPULATION FOR ENTRY OF CONSENT DECREE

This Stipulation is entered into by the parties to resolve claims asserted by the plaintiffs in their Complaint as amended against all defendants and to provide for retention of jurisdiction and permanent injunctive relief. Defendants withdraw their Offer of Judgment and same shall be deemed without force and effect.

PARTIES

The individual named plaintiffs are OLLIE CARRUTHERS, THOMAS ZERVOS AND GERALD TICE. This action was certified as a class action. The defendants are the Sheriff of Broward County, currently RON COCHRAN, and the Broward County Commissioners, currently GERALD F. THOMPSON, SYLVIA POITIER, JOHN P. HART, SCOTT I. COWAN, LORI N. PARRISH, SUZANNE N. GUNZBURGER, and JOHN E. RODSTROM, in their capacities as County Commissioners of Broward County, and HENRY L. TEMPLETON, as Director of the Department of Corrections and Rehabilitation. These persons, in their official capacities, have been substituted for the original defendants by operation of Federal Rule of Civil Procedure 25(d).

GENERAL PROVISIONS

1. The original Complaint in this cause was filed pro se against the then named defendants in their official capacities. Thereafter, plaintiffs, then represented by counsel, filed First and Second Amended Complaints alleging, *inter alia*, that defendants had failed to carry out their statutory and constitutional duties relating to the maintenance and operation of the Broward County jails and further alleging that, as a result of defendants' acts and

1

omissions, taken under color of state law, defendants had caused plaintiffs continued confinement under conditions that violated plaintiffs' constitutional rights.

2. The Second Amended Complaint asserts causes of action against defendants arising under, and jurisdiction pursuant to, 42 U.S.C. §§ 1983 and 1988; 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 2201 and 2202; and the Constitution of the United States, specifically but not limited to the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments thereto. The action seeks declaratory judgment and preliminary and permanent injunctive relief.

3. Pursuant to Rule 23 of the Federal Rules of Civil Procedure and Local Rule 19 of the United States District Court, in and for the Southern District of Florida, this action was certified as a class action on November 9, 1979 on behalf of all persons who have been, are being, or will be confined in the Broward County corrections and rehabilitation facilities. By agreement of the parties this includes any jails that Broward County or the Sheriff of Broward County may in the future operate or contract with a private company to operate.

4. Conditions of confinement have previously been determined to be unconstitutional. The population caps established by this court were essentially continuously exceeded until the summer of 1992 , despite the $1,000 per day fine levied for exceeding the cap.

5. The parties agree that progress has been made in addressing the matters raised by plaintiffs during this action and that further improvement can be obtained by implementing the agreements and achieving the goals set forth herein.

6. Counsel for the plaintiffs represents that it is desirable and in the best interests of the members of the Plaintiff Class to settle the issues resolved herein by entering into this

agreement. The comment of the members of the Class shall be solicited and considered as provided by Federal Rule of Civil Procedure 23 (e).

7. The defendants consider it desirable and in their best interests to settle the claims brought against them and their predecessors in office by entering into this stipulation. Implementation of this stipulation resolves the differences of the parties regarding conditions of confinement in the Broward County corrections and rehabilitation system.

8. This Agreement shall bind all parties to this action as well as their successors in office. Defendants agree to use their best efforts to make the requirements of this agreement known to each of their employees, deputies, and agents who are responsible for the operation of detention facilities within Broward County, Florida. The defendants shall ensure that the relevant requirements of this agreement are made known to and complied with by any private parties with whom the Sheriff or County now contracts or shall in the future contract with to provide goods or services to any Broward County correction and rehabilitation facilities.

NOTICE TO CLASS.

9. Pursuant to Rule 23(e), Federal Rules of Civil Procedure, Notice of Proposed Settlement shall be distributed and published to the class in the manner and format approved by the Court including posting in each housing area in a place accessible to inmates generally, including those inmates in administrative, disciplinary or solitary confinement, which notice shall be posted and distributed in English, Spanish, and Creole. Sufficient copies of this agreement will be kept in each pod and made available to any inmate requesting same.

Class members shall have until the date ordered by the Court to file with the Clerk of the Court any written objections to this proposed settlement. The Clerk shall forward

3

copies of any objections or inquiries to the Special Master and counsel for the parties. The Sheriff of Broward County shall provide free paper, envelopes and postage to inmates desirous of filing objections to this settlement. Such communications with the Court shall be considered legal mail. All objections will be considered fully by the Court.

STATEMENT OF STANDARDS

10. It is the intent of this Agreement to achieve responsible and professional corrections and rehabilitation practice in all Broward County facilities and to facilitate and encourage personal contact and interaction between staff and inmates. Accordingly, all Broward County correctional facilities shall be operated and maintained, at a minimum, in compliance with applicable federal and Florida law, and the following standards:

    a. Chapter 33-8 of the Florida Administrative Code

    b. American Correctional Association Standards for Adult Local Detention Facilities (currently 3rd Edition).

    c. National Commission on Correctional Health Care Standards of medical, dental and mental health services.

    d. Physical and operational standards (that would include policies and procedures) as developed by the defendants which shall, at a minimum, apply the most stringent provisions of the aforementioned applicable law and standards and address all of the applicable standards set forth in the American Correctional Association Standards for Adult Local Detention Facilities. Pending ACA accreditation the defendants agree to make good faith efforts to substantially comply with such standards.

4

e. Realizing the impracticality of reproducing the entire set of ACA Standards and 33-8 for distribution to the plaintiff class as part of the comment process set forth herein, and recognizing the importance of conveying the intent and scope of various provisions of this agreement, the parties, by way of illustration and example, hereby set forth some of the standards that shall apply:

1. <u>Classification</u> Inmates shall be classified to the most appropriate level of custody and programming both on admission and on review of their status. The classification process shall include all information available or obtainable from the social, legal and self-reported medical history of the detained person. The primary objective of classification is to place inmates in the type of quarters that best meet their needs and to provide reasonable protection for the inmate and other inmates. Inmates shall be assigned to housing with particular care to the assignment of persons who have a history of, or exhibit aggressiveness toward other inmates. Each facility shall have a designated classification officer. Insofar as facilities permit, no inmate shall be subjected to more restrictive conditions of confinement, including but not limited to freedom of movement within the institution, and out-of-cell time, than those justified by the inmate's classification.

2. <u>Religious Practices</u>

a. The defendants shall not substantially burden an inmate's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

b. The defendants may substantially burden an inmate's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a

5

compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.

   c. Each facility shall appoint a chaplin to coordinate religious services and activities.

 3. <u>Use of Force</u>  Force shall be used only as a last resort to control inmates and only to the degree that is reasonably necessary in self-defense, to prevent escape, to prevent injury to a person or property, to quell a disturbance, or when the inmate exercises physical resistance to a lawful command. All security and custody personnel shall be trained in approved methods of self-defense and the use of force as a last resort to control inmates. Instruments of restraint, such as handcuffs, irons, and straight-jackets, shall not be applied longer than is absolutely necessary and never applied as punishment and shall be applied only with the approval of the Facility Administrator or designee.

 4. <u>Housing</u>  The parties agree that each inmate is entitled to living facilities such that no inmate is required to sleep or eat on the floor, except as may be directed by a licensed medical or mental health professional. Temperatures shall be maintained within a normal comfort range. Special inmates, who present a threat to the staff, other inmates, or themselves, should be separated and closely supervised. Special inmates may include the mentally ill, alcoholic, drug addict, sex deviate or suicide risk, or persons with contagious or communicable diseases. Any inmate who is identified as a suicide risk shall not be housed in a "single occupancy cell" unless the inmate is observed by direct visual observation 24 hours each day. Close supervision for special inmates shall include regular, documented sight

6

checks by correctional officers or medical staff at intervals not to exceed 15 minutes. Special housing shall be provided to inmates for medical reasons upon orders of the facility physician.

5. <u>Recreation</u>  Absent physician restriction or disciplinary action, inmates shall have access to recreational opportunities and equipment, including four hours weekly of physical exercise outside the cell and outdoors when weather permits. Sufficient space, equipment and staffing to permit both individual activities and group activities shall be provided.

6. <u>Visitation</u>  Rules and regulations pertaining to the time and conduct of visitation shall be posted for the knowledge of the inmates and prospective visitors. A copy of the rules shall be given to each inmate. Visitation periods shall be permitted so that each inmate in general population has the opportunity for at least two hours of visitation each week.

7. <u>Programs</u>  All correctional facilities shall make maximum use of programs available through local community resources. At least one employee in each detention facility shall act as liaison between the facility and the community agencies that offer needed programs and services.

8. <u>Medical, Dental and Mental Health Services</u>  Inmates in all facilities will be afforded medical, dental and mental health services, medication, appliances and medical related housing consistent with the requirements of paragraphs 10a through d above.

PROCESS

11. The defendants recognize the importance of achieving American Correctional Association accreditation pursuant to the Standards for Adult Local Detention Facilities and agree to attain such accreditation.

7

12. The Broward County Sheriff, through the Director of Corrections and Rehabilitation, will cooperate with Broward County officials to identify and plan for the actions necessary to achieve the objectives of this Agreement.

13. The parties recognize that the objectives of this Agreement can best be achieved by formulation and implementation of a plan which incorporates the following elements and which provides for a schedule and implementation. Accordingly, the parties adopt and agree to implement the schedule set forth herein:

A. Organization

The Sheriff of Broward County shall develop and carry out a reorganization plan for the Department of Corrections and Rehabilitation that defines the mission of the agency and all of its facilities. The plan will include the organization and management structures, staffing, operational budget and implementation schedule necessary to carry out the mission of the agency and its facilities.

| Task or Activity | | Due Date |
|---|---|---|
| A. | Organizational Issues | |
| A1 | Define Organization | Done |
| A2 | Define Required Resources | Done |
| A3 | Develop Implementation Schedule | 9/15/94 |
| A4 | Appoint Planning Manager | Done |
| A5 | Schedule Required Resources | 10/1/94 |
| A6 | Schedule Funding for Required Resources | 10/1/94 |
| A7 | Define Internal Monitoring and Reporting Process | 10/31/94 |

8

B. Inmate Population Assumptions

The defendants shall develop a plan to project or forecast the demand for prisoner beds or supervision programs. Such plan shall periodically update the projection for the prisoner population.

| Task or Activity | | Due Date |
|---|---|---|
| B. | Inmate Population Assumptions | |
| B1 | 5 Year Intake Assumptions | 6/1/95 |
| B2 | 5 Year Average Daily Population Assumptions | 6/1/95 |
| B3 | Forecast Assumptions | 6/1/95 |
| B4 | Develop Forecast Update Mechanism | 6/1/95 |

C. Jail Population Management Plan

The Sheriff shall develop a Jail Population Management Plan based on policies and resources that are consistent with the population projections. The Sheriff shall develop a plan of how the prisoner population will be managed. The plan will include, but not be limited to, a Prisoner Classification Plan, a Housing Unit Assignment Plan, and an Alternatives to Incarceration Plan.

| Task or Activity | | Due Date |
|---|---|---|
| C. | Jail Population Management Plan | |
| C1 | Develop an Inmate Classification Plan | 4/1/95 |
| C2 | Develop a Housing Unit Assignment Plan | 4/1/95 |
| C3 | Develop an Alternatives to Incarceration Plan | 4/1/95 |
| C4 | Develop an Inmate Program and Activity Plan | 4/1/95 |

9

D. Physical and Operational Standards

The defendants shall develop physical and operational standards for Broward County detention facilities which meet the standards set forth in this agreement. Defendants shall then apply these standards in the operation of the facilities.

| Task or Activity | | Due Date |
|---|---|---|
| D. | Physical and Operational Standards | |
| D1 | Develop Physical Plant Standards | 4/1/95 |
| D2 | Develop Operational Standards | 4/1/95 |
| D3 | Audit Existing Plants and Operations | 4/1/95 |
| D4 | Develop Improvement Plan | 4/1/95 |
| D5 | ACA Accreditation | eighteen months from agreement |

E. Capital Projects Management Plan

Broward County, with the Sheriff's participation, shall develop a Capital Projects Management Plan to provide funding for renovation of existing facilities and construction of proposed facilities in conformity with the intent of this agreement. Said plan shall take into account the necessary management systems and structures for the proper operation of such facilities. It is understood that such plan will be subject to review and revision to reflect changes in confinement population.

| Task or Activity | | Due Date |
|---|---|---|
| E. | Capital Projects Management | |
| E1 | Develop a Capital Project Management Process | 5/1/95 |
| E2 | Develop a Funding Scheme | 6/1/95 |

E3    Develop a Schedule to Meet Required Capacity          6/1/95

F. Operational Management Plan

The Sheriff shall develop an operational management plan that shall address the development of a documentation system including policy directives, operating procedures, post orders, staffing plan, and address all necessary training.

| Task or Activity | Due Date |
|---|---|
| F. **Operational Management Plan** | |
| F1    Develop Documentation, Policy and Procedure System | eighteen months from agreement |
| F2    Develop Staffing Plan | 1/1/95 |
| F3    Develop Training Plans | 1/1/95 |
| F4    Develop Transition Plan for New Service Delivery System | 1/1/95 |

G. Management Information Systems Plan

The Sheriff shall develop a plan to provide management information systems, to support the actions called for in this agreement. To this end the Sheriff, after consultation with Broward County, shall identify what information is needed and how it will be managed to support and perform the requirements of this agreement. The parties recognize that the Sheriff does not have exclusive control over such information.

| Task or Activity | Due Date |
|---|---|
| G. **Management Information Systems Plan** | |
| G1    Develop a MIS Plan to Support All Activities | 6/1/95 |

CAPACITY AGREEMENT

11

## CAPACITY AGREEMENT

14. The parties agree that each inmate shall be entitled to a bed, as set forth in 33-8 and as otherwise provided for herein. Authorized capacity of this system shall be determined by the number of available beds subject to the standards set forth in Chapter 33-8 of the Florida Administrative Code. The current authorized capacity of the Broward County Corrections and Rehabilitation system is 3,656 inmates. It is agreed that when the inmate population in the Broward County Department of Corrections and Rehabilitation facilities reaches 3,218, or within eighty-eight percent (88%) of its authorized capacity, the Sheriff and the Director of the Broward County Department of Corrections and Rehabilitation will exercise every internal mechanism or option within their legal authority to speed administrative decisions and actions to control the growth of the inmate population. The Public Safety Coordinating Council, or its successor, shall be notified by the Sheriff when the inmate population exceeds eighty-eight percent (88%) of its authorized capacity. When the inmate population reaches ninety-five percent (95%) of its authorized capacity, currently 3,473 inmates, the Sheriff shall request the Public Safety Coordinating Council, or its successor, and its representative justice agencies and their successors, to carry out the available mechanisms as developed in accordance with Florida Statute 951.26 to control the inmate population. The Broward County Department of Corrections and Rehabilitation shall not retain more than 3,656 inmates at any given time. Upon attaining the rated capacity of 3,656 inmates no further inmate admission shall be permitted. This admission moratorium may not be avoided except upon extreme conditions created by disaster, insurrection, riot or a similar emergency or catastrophe.

However, nothing in this agreement prohibits the Sheriff of Broward County from transferring inmates to other local or out of county facilities or petitioning appropriate local criminal justice authorities for relief from these overcrowded conditions.

## COMPLIANCE MONITORING

12

Judge Hoeveler's Objection:

Page 12, last paragraph should read:

or catastrophe. "Nothing in this agreement prohibits the Sheriff from transferring prisoners to other local or out-of-county facilities or from petitioning appropriate local criminal justice authorities for relief from the over crowded conditions."

*Addendum to p. 12*

15. On submission of each plan required by the planning process described in the "Process" section of this agreement, together with that plan's implementation schedule, the Special Master shall insure that Plaintiff's counsel receives copies of the materials submitted. Plaintiff's counsel shall have fifteen (15) days from receipt to submit any comment.

16. If plaintiffs object to defendant's proposed plan or its implementation schedule, the parties, with the assistance of the Special Master, or if he is unavailable an assigned federal magistrate, shall attempt to resolve these differences. If such differences are not resolved within thirty (30) days of the submission of the objections, the defendant's plan, the objections, and any recommendations of the Special Master or magistrate will be submitted to the Court. Copies of any such recommendations shall be furnished to counsel for the parties. Within ten (10) days of the submission to the Court and parties, either party may request a hearing, or the Court may order a hearing. If a hearing is not timely requested, the recommendation shall be accepted as uncontested by the parties.

17. Once a plan and its implementation schedule are approved by the Court, defendants shall carry it out. Whenever practical, parts of each plan shall be presumed to be separable such that objection to one part of a plan shall not delay implementation of other parts that can proceed independently so long as no objection exists to those other parts.

18. The Special Master or his designee shall monitor compliance with the terms of this agreement including implementation of the plans approved by the Court, the schedule set forth in the "Process" section, and the standards set forth in the "Statement of Standards" section. The Special Master shall provide the Court and counsel for the parties with status reports on compliance with the schedule, standards, and all approved plans and the status of

each required plan, beginning three (3) months after approval of this agreement by the Court and at three (3) month intervals thereafter or with such other frequency or at any time as the Court may direct. The compliance status will be rated using the following classifications:

    a. The Special Master concludes that the defendants are in substantial compliance with the particular requirement.

    b. The Special Master concludes that the defendants are in compliance with a particular requirement, subject to specified exceptions and/or qualifications as noted in the report.

    c. The Special Master cannot make a finding because of insufficient evidence, unresolved ambiguity as to what actions are necessary for compliance, or a need for additional professional expertise.

    d. The Special Master concludes that the defendants are not in compliance with the particular requirement.

19. Prior to submitting a status report to the court the Special Master shall furnish each party with a copy of his proposed report. The parties will then have ten (10) days to comment directly to the Special Master on the contents of his report. The Special Master will submit his final report to the Court and the parties within ten (10) days of receipt of the parties' comments. The parties will then have ten (10) days in which to request a hearing regarding any remaining disagreements with the final report. If a hearing is not requested in a timely manner, the Special Master's findings shall be accepted as uncontested.

20. Hearings on defendant's compliance shall be scheduled not earlier than thirty (30) days from the submission of the Special Master's status report.

21. In the event a hearing is requested, the Special Master will hold a pre-hearing conference with the parties, at least five (5) days prior to the compliance hearing before the

Court. The subject report and compliance issues will be reviewed by the parties at the pre-hearing conference.

22. The current practice which affords prisoners free telephone access to plaintiff's counsel for reporting of complaints of conditions of confinement, which allegations are then investigated by plaintiff's counsel or his staff, will be modified in practice by this agreement as follows:

    a. The Sheriff will implement within five (5) days of this agreement a Grievance policy. This policy and operational procedure will provide for the written submission of prisoner grievances and complaints. The Sheriff will forward to plaintiff's counsel copies of same on a weekly basis. Determinations of all grievances and complaints shall be forwarded to plaintiff's counsel on a weekly basis.

    b. Upon implementation of the aforementioned policy and procedure, plaintiff's counsel, upon receipt of a telephone call from a prisoner shall record the caller's name, necessary identification information, and the nature of the complaint or grievance. Except in the case of serious medical complaint or where the matter is in the nature of an emergency, the prisoner shall be informed that he or she is required to utilize and exhaust the administrative remedies set forth in the grievance procedure before requesting direct assistance from plaintiff's counsel. By way of response to such non-emergency or non-serious medical calls, plaintiff's counsel shall forward to each caller a letter confirming the call, the nature of the call, and the requirement of exhaustion of administrative remedies pursuant to the grievance procedure. Copies of such confirming correspondence shall be forwarded to John Tiedeberg, Federal Court Liaison, and to the person designated by the Sheriff to receive same.

15

c. This provision and modification of plaintiff counsel's practice in receiving and responding to prisoner complaints is intended to record and report complaints and grievances and to record and report their disposition. It does not prohibit any member of the class from calling or communicating with plaintiff's counsel. Free telephone access to plaintiff's counsel shall continue during the monitoring period and notice shall be posted in each housing unit identifying plaintiff counsel, the phone number and explaining the process provided in subparagraph (b) above.

23. Compliance monitoring will be by the Special Master or his designee.

24. Pending ACA accreditation the parties agree to meet to clarify issues and determine the status of the various elements of this agreement. The parties will meet monthly until such time as all parties agree upon less frequent meetings.

25. Compliance monitoring shall continue until ACA accreditation or order of the Court.

EFFECT OF AGREEMENT

26. Upon Court approval of this stipulation the terms of this agreement shall be incorporated into the Consent Decree. The defendants shall be permanently enjoined from violating the terms of the Consent Decree. Defendants' obligations regarding ACA compliance shall terminate upon defendant's achieving ACA accreditation. The Court shall retain jurisdiction to enforce the terms and conditions of the Consent Decree.

ALLOCATION OF FINE MONEY

27. The individual plaintiffs named in the Second Amended Complaint, OLLIE CARRUTHERS, THOMAS ZERVOS, and GERALD TICE are each awarded the sum of

$25,000 as damages. Such sums to be paid from the fine monies paid into the registry of the Court. The parties will make good faith efforts to locate these individuals, including appropriate publication and records search. Any portion of this award not paid by the end of the Compliance Monitoring period shall be disbursed by the Court for the welfare of the inmate population as determined by agreement of the parties or hearing before the Court.

28. Fine monies may be disbursed to pay for expert fees incurred by the Special Master during the Compliance Monitoring period or for such other purposes as may be appropriate in conjunction with such monitoring.

29. During the compliance monitoring period, and upon its conclusion, any remaining fine monies may be disbursed by agreement of the parties for the welfare of the inmates. Absent such agreement, any party may apply to the Court for disbursement of fine monies for such purposes as the Court, upon notice and hearing, shall determine to be appropriate.

FEES AND COSTS

30. During the Compliance Monitoring period provided herein the Special Master, the Federal Court Liaison, and plaintiffs' counsel shall submit itemized monthly statements of time and costs to the Office of the General Counsel, Broward County, for payment within ten (10) days of their submission. Hourly billing of the Special Master and plaintiffs' counsel shall be paid at the rate of $125.00 per hour. Hourly billing of the Federal Court Liaison shall be paid at the rate of $75.00 per hour. If a dispute arises regarding fees set forth in the statements, and such dispute cannot be resolved among the parties, the matter will be assigned to a federal magistrate in Broward County for arbitration.

17

ENTIRE AGREEMENT

31. This Agreement contains the entire agreement between the parties. All prior negotiations, discussions and agreements are merged into this agreement.

ACKNOWLEDGMENT OF BROWARD COUNTY COMMISSION

32. Attached hereto and made a part of this Agreement is a certified copy of the minutes of the County Commission held on _____, 1994 wherein the Broward County Commission approved this agreement.

STIPULATED AND AGREED this 27th day of July, 1994.

_____
RON COCHRAN, Sheriff of Broward County, Florida

_____
HENRY L. TEMPLETON, Director of Department of Corrections and Rehabilitation, Broward County, Florida

_____
CHARLES T. WHITELOCK
Attorney for Sheriff Cochran and Director Templeton
as to legal form and sufficiency

_____
ALEXANDER COCALIS
Attorney for Broward County Commissioners
as to legal form and sufficiency

_____
CHRISTOPHER C. CLONEY, Co-Counsel
on behalf of the Plaintiff Class

_____
FREDERICK A. GOLDSTEIN, Co-Counsel
on behalf of the Plaintiff Class

18