UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:14-cv-61577-BLOOM


CEANIEL EDWARDS
As personal representative of the Estate
RALEIGH PRIESTER, Deceased,
CHRISTINA ANDERSON, an individual and daughter of
 RALEIGH PRIESTER, RALEIGH PRIESTER, Jr., an individual and
Son of RALEIGH PRIESTER and JAMES PRIESTER, an individual and
Father of RALEIGH PRIESTER;

      Plaintiffs,

v.

ARMOR CORRECTIONAL HEALTH SERVICES, INC.,
 a Florida corporation, and;
SCOTT ISRAEL, in his official capacity
as Sheriff of Broward County, Florida, and;
 JOHN MARTIN M.D., and
STANLEY FRANKOWITZ D.O. individually and
as a doctors employed by
ARMOR CORRECTIONAL HEALTH SERVICES, INC.; and  the
BROWARD COUNTY BOARD OF COUNTY
COMMISSIONERS,

      Defendants.
_____/

## **FIRST AMENDED COMPLAINT**

 The Plaintiffs, CEANIEL EDWARDS, as Personal Representative of the Estate of the

Decedent Raleigh Priester and the decedent's adult daughter CHRISTINA ANDERSON,

the decedent's adult son RALEIGH PRIESTER, Jr., and the decedent's father JAMES

PRIESTER, sue Defendants, jointly and severally, and allege:

1

## PRELIMINARY STATEMENT

1.     Raleigh Morris Priester, (hereinafter PRIESTER) a United States Army veteran, who has battled severe mental health problems including schizophrenia for over two decades was arrested on February 6, 2012 for throwing a rock at a City of Fort Lauderdale employee who had asked him to vacate a city parking garage.  According to booking records from the Broward County Jail PRIESTER was 6 foot 2 inches tall and weighed 240 lbs the day he was arrested.  When PRIESTER was found dead in his isolation cell on July 10, 2012, 155 days after his arrest, he weighed only 120lbs.  For 155 days, countless employees, from both the Broward County Sheriff's Office and Armor Correctional Healthcare, stood by and watched as PRIESTER who was continuously locked in solitary confinement, without any type of medication or medical treatment for either of his serious medical or mental health conditions, slowly died from starvation. Defendants intentionally refused to provide, and in fact did deny, PRIESTER adequate amounts of food and water and provided him with no medical care or treatment in violation of the Fourteenth Amendment to the United States Constitution. Defendants' acts are shocking to the conscience, are a severe deprivation of civil rights, and are intolerable in a society governed by civil laws and considerations of basic human decency.

## JURISDICTION

2.     This is an action for damages arising out of one or more violations of State and Federal law detailed below.

3.     This action is brought pursuant to 42 U.S.C. §1983, and the Fourteenth Amendment to the United States Constitution as Raleigh Priester (hereinafter PREISTER) was a pretrial detainee at all relevant times.  Jurisdiction is based upon 28 U.S.C. §1331, §1343, and 42

U.S.C. §§ 1983, 1988, the constitutional provisions mentioned above, and under Florida tort law.

4.      It is alleged that the federal violations were committed as a result of the deliberate indifference of all of the Defendants.

5.      The acts and practices constituting the violations alleged below have occurred within the jurisdiction of the United States District Court in and for the Southern District of Florida.  In connection with the acts, practices and violations alleged herein, each Defendant has, directly or indirectly, violated the constitutional rights of PRIESTER.

6.      All conditions precedent under Florida law to the filing of this lawsuit have been satisfied.

7.      The above listed Plaintiffs, through PRIESTER'S Personal Representative, Ceaniel Edwards, seek an award of damages for mental and emotional injuries, funeral expenses, punitive damages, court costs and attorney fees on behalf of the above listed survivors.

## PARTIES

8.      PRIESTER and his Personal Representative, at all times material hereto, have been residents of Broward County, Florida.

9.      The Defendant, SCOTT ISRAEL, (hereinafter ISRAEL) is the Sheriff of Broward County.  Said Defendant is responsible, as Sheriff, for the conduct of the deputies and/or corrections officers in his employ and ensuring that his deputies, corrections officers, employees, servants and agents obey the laws of the State of Florida and the United States.  Said Defendant is being sued in his official capacities.

10.      The Defendant ARMOR CORRECTIONAL HEALTH SERVICES,

INC., (hereinafter ARMOR) is a Florida Corporation, organized and existing under the laws of the State of Florida, conducting business in Broward County, Florida.

11.     The Defendants JOHN MARTIN, M.D. (hereinafter MARTIN) and STANLEY FRANKOWITZ D.O. (hereinafter FRANKOWITZ) at all times material herein, were duly appointed doctors, employed by and serving under Defendant ARMOR. Said Defendants are being sued in their individual and official capacities.

12.     The Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS (hereinafter County) is the legislative and governing body of Broward County.  Said Board has the powers and duties to, among other things, carry on county government, make investigations of county affairs and perform acts which are in the common interest of the people of Broward County.

13.     Pursuant to Florida law, Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS is charged with the duty of maintaining, staffing and supervising all correctional activities in Broward County and, in doing so, said Board has appointed Defendant ISRAEL, as its Chief Correctional Officer, and delegated those duties to him.

14.     The Defendant ISRAEL, as the appointee of the Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS, has been subject to its orders at all times material hereto.

15.     At all times material hereto, and in all their acts described herein, the Defendants were acting under color of state law and color of their authority as public officials and public employees of the State of Florida.

16.     The wrongful actions of the Defendants constitute deliberate indifference to PRIESTER'S serious medical condition and negligence under the laws of the State of Florida.

## ALLEGATIONS OF FACTS

17.     On or about February 6, 2012, the Plaintiff, PRIESTER, was arrested. According to the Broward County Jail's booking information **he weighed 240 lbs** the day he was arrested. (Exhibit A)

18.     During the intake process on February 6, 2012, ARMOR employee June McClain attempted to complete the ARMOR "intake health screening" form.  However, she was unable to get any information on the 47 different medical topics that ARMOR requires at intake because according to her written comments, "the patient was unable to be screened.  Patient sits there and talks to himself and won't answer any questions attempted by screening EMT".

19.     On or about February 8, 2012, RALEIGH PRIESTER was interviewed by Defendant, MARTIN, for an initial mental health evaluation.  Defendant MARTIN recorded that PRIESTER was non-verbal, had attempted to flood his cell and ordered that he be transferred to solitary confinement within the closed mental health unit of the jail. Defendant MARTIN did not order any medication for PRIESTER'S obvious mental health needs or schedule any type of follow-up for further evaluation.

20.     On or about February 10, 2012, ARMOR employee, James Shramm, who is a "discharge planner", met with PRIESTER.  At this time Shramm found PRIESTER to be naked, non-verbal and not able to participate in discharge planning.  Shramm researched PRIESTERS history and learned that in the past PRIESTER had been found Not Guilty by Reason of Insanity, spent time in the state mental hospital, been involuntary committed to

Bayview hospital and was under the supervision of the Broward County Mental Health Court until 2010.

21.     From February 12, 2012 to March 14, 2012, PRIESTER was kept in isolation and both ARMOR'S and SHERIFF'S employees' including Defendant MARTIN and FRANKOWITZ observed PRIESTER consistently standing in cell naked, yelling incoherently, actively hallucinating, banging his head into the floor causing himself to bleed and having difficulty walking.   No ARMOR employee, including, Defendant MARTIN, the jail psychiatrist, attempted to treat PRIESTER'S obviously serious medical condition in any way.

22.     On March 15, 2012, Defendant MARTIN, signed off on a "Medical Clearance of Baker Act" for PRIESTER.   This document was completed by ARMOR Mental Health Counselor, Cynthia Sanon.  Ms. Sanon found that PRIESTER suffered from a mental illness and that because of this mental illness,

 "without care and treatment PRIESTER is likely to suffer from neglect or refuse to care for himself, and that such neglect or refusal poses a real and present threat of substantial harm to his well-being and there is a substantial likelihood that without care or treatment PRIESTER will cause serious bodily harm to himself in the near future, as evidenced by recent behaviors".

 As supporting evidence for the above findings Ms. Sanon documented that PRIESTER is "disheveled, responding to internal stimuli, mute and unable to determine the necessity for mental health treatment and he exhibits a decrease in appetite and poor self-care".  On March 15, 2012 Ms. Sanon wrote down that **PRIESTER weighed 220 lbs**.  (Exhibit B)

23.     From March 16 to May 21, 2012, PRIESTER remained in solitary confinement untreated and without any type of medication.  On a daily basis PRIESTER

was observed by ARMOR'S and SHERIFF'S employees' including Defendant MARTIN and FRANKOWITZ.  During this time period his jail medical records reflect the following:

PRIESTER was constantly mumbling to himself; he was suffering from a urinary tract infection, that was never treated, as evidenced by "bright red urine" on the cell floor for weeks; PRIESTER was bleeding from unknown origin as evidenced by blood on the cell floor; PRIESTER was laying for weeks at time in a fetal position on the cell floor; PRIESTER'S feet were ulcerated and infected for weeks; PRIESTER became so weak that he could not sit up or stand to put on his pants without assistance;  PRIESTER became so weak that he could not eat or drink without assistance.

24.     On May 21, 2012, Christopher Fichera, a clinical and forensic Psychologist, was sent by Broward Circuit Court Judge Raag Singhal to evaluate whether PRIESTER was competent to proceed in the ongoing criminal case.  Mr. Fichera found that PRIESTER was "suffering with significant symptoms of physical decomposition" including "acute hypotension and dehydration" to the point that PRIESTER was unable to appreciate the purpose of the evaluation.  As part of his evaluation Mr. Fichera interviewed the nurse on duty, an ARMOR employee, who stated that PRIESTER was not able to follow simple commands and that she "has been attempting to give him water with a syringe, and that he is able to swallow only small amounts of this."  Said nurse stated, "that PRIESTER has not been given a medical diagnosis and was not on any medications."

25.     On May 21, 2012, Mr. Fichera interviewed Defendant MARTIN who stated that, "PRIESTER has been essentially non-responsive and has not been eating or drinking and for those reasons he has become dehydrated."

26.     On May 21, 2012, Mr. Fichera concluded that PRIESTER was not medically stable.

27.     By May 21, 2012, PRIESTER had not yet been diagnosed with any mental health problems by any ARMOR employee and was not on any type of medication.

28.     On May 22, 2012, PRIESTER was found unresponsive on the floor of his isolation cell.   Defendant FRANKOWITZ was notified and approved the transfer of PRIESTER to North Broward Medical Center (NBMC).

29.     Upon intake at NBMC PRIESTER was placed on a ventilator and taken to the Intensive Care Unit.

30.     On May 22, 2012, at NBMC PRIESTER **weighed 139 lbs** (a drop of 101 lbs since the day he was arrested) and was diagnosed as being hypothermic with a blood pressure of 94/40, malnourished, dehydrated, septic, suffering from bilateral pneumonia and his treating doctor stated his condition is extremely critical.

31.     Realizing that PRIESTER was gravely ill and malnourished the medical staff at NBMC consulted a dietitian who prescribed a high calorie diet.  **By May 25, 2012, PRIESTER, with proper nutrition, gained 11 lbs and got his body weight back up to 151 lbs**.

32.     PRIESTER stayed at NBMC from May 22 to May 29 of 2012.  During that time he was treated for his many serious medical conditions including various infections of his blood, lungs and feet.  He was also prescribed several medications for his serious physical conditions and mental health conditions.

33.     On May 29, 2012, PRIESTER was discharged from NBMC back to the Broward County Jail with specific instructions to the jail regarding PRIESTER'S continuation of care for his diagnosed serious medical conditions.

34.     From May 29 to June 25, 2012 PRIESTER was returned back to solitary confinement and employees of ISRAEL and ARMOR including Defendant MARTIN and FRANKOWITZ failed to provide him with any of the medication ordered by NBMC and stood by and watched as he slowly died.  According to PRIESTER'S jail medical records during this time he was observed being agitated, non-verbal, talking to himself, urinating and defecating everywhere except the toilet and being in obvious medical crisis.

35.     The last progress note recorded by an ARMOR employee was on June 25, 2012 and states that PRIESTER was "standing on the top bunk playing with a blanket and he refused to come to the cell door."  The employees' written plan for PRIESTER'S future medical care was the same plan written hundreds of times by various ARMOR employees since his arrest in February of 2012 – "will continue to monitor".

36.     On July 10, 2012, PRIESTER was found dead on the floor of his solitary confinement cell.  **He weighed 120lbs**.  In 155 days PRIESTER'S weight had dropped from 240 lbs to 120 lbs.

37.     Defendants ARMOR and ISRAEL through their employees, including but not limited to Defendants MARTIN and FRANKOWITZ ignored clear signs that Plaintiff was suffering from serious physical and  mental illnesses that required treatment and as a result of their neglect and deliberate indifference to his serious medical conditions PRIESTER died a slow and horrible death.

38.     Defendants ISRAEL and the BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS were on notice that the Broward County jail facilities failed to properly treat the special needs inmates such as the mentally ill in that, on or about July 27, 1994, Defendants' predecessors had voluntarily entered into a consent decree to correct the unconstitutional conditions caused the failure to treat and care for the special needs inmates.  (Exhibit C).

39.     Said consent decree was to be binding on successor Sheriffs, Broward County Commissioners and any private parties with whom they contracted concerning the care, custody and control of inmates within the Broward County jail facilities. (Exhibit C).

40.     Despite notice of unconstitutional conditions and despite a voluntary agreement to rectify these conditions, Defendants ISRAEL and/or BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS continued to maintain the jail facilities in an unconstitutional manner which promoted neglect of inmates with the foreseeable result being injuries and deaths to the inmates under their care, custody and control.

41.     On or about December 16, 2009, a contract was entered into between Broward Sheriff Al Lamberti, Defendant ISRAEL'S predecessor, and Defendant ARMOR through its President Jose Armas for the purpose of providing comprehensive health care services for all inmates of the Broward County jail facilities which included the assessment, care and treatment of the mentally ill.

42.     In the contract ARMOR agreed to accept $25,163,410.00 per year to provide "comprehensive medical, mental health, dental and related health care services for individuals incarcerated in any of the Broward Sheriff's Office Detention Facilities." (Exhibit D)

43.     The $25,163,410.00 per year that ARMOR agreed to accept is a set amount. Therefore, the only way that ARMOR, a for-profit corporation, can make a profit is to spend less than $25,163,410.00 per year on the health care of inmates within the Broward County Jail.  (Exhibit D)

44.     The contract between ARMOR and ISRAEL creates a huge financial incentive for ARMOR to refrain from sending inmates to an outside health care provider, such as a hospital for treatment, as the contract states that ARMOR is responsible for all costs associated with the treatment of any inmate at an outside facility up to the total cost to the outside facility or fifty thousand dollars ($50,000.00) per inmate, per occurrence. (Exhibit D at page 37)

45.     The   conduct   of   Defendants   ARMOR,   ISRAEL, MARTIN and FRANKOWITZ was in total disregard of their duties to Plaintiff, and/or was reckless and created a substantial risk of harm to PREISTER.   Said Defendants allowed Plaintiff, a person that they knew was mentally ill and physically very sick to be placed into solitary confinement for months and months without even attempting to medicate him or pay to move him to a facility that could properly care for him or even give him enough food and water to stay alive.


46.     Defendants ISRAEL, ARMOR, MARTIN and FRANKOWITZ, each had a duty to ensure that reasonable measures were taken to provide for the safety of inmates at the Broward County Jail facility, and in particular, the mentally ill.

47.     Defendant ISRAEL, as the Chief Correctional Officer, appointed by the Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS, had a

duty to train, supervise, control and otherwise ensure that Defendants ARMOR, MARTIN and FRANKOWITZ did not violate the constitutional rights of persons such as the Plaintiff PRIESTER. Said Defendant abdicated his policymaking and oversight responsibilities, thereby allowing and making foreseeable the incident involving the Plaintiff to occur.

48.     Defendant ISRAEL, knew or should have known: (1) the requirements of the Carruthers consent decree; (2) reports demonstrating a failure of both corrections and medical staff in properly assessing and treating mentally ill inmates; (3) preventable poor health outcomes of inmates and deaths that resulted from improper treatment and neglect of the mentally ill; (4) a failure to document inmate medical needs in order to identify at risk inmates; (5) that corrections deputies were not trained with respect to the care and custody of the mentally ill; (6)  that investigations into incidents of inmate neglect and poor medical outcomes including death were incompetent and failed to address the misconduct of the ARMOR employees and/or corrections officers, with the foreseeable result being the creation of circumstances that resulted in the neglect and death of the Plaintiff PRIESTER.

49.     Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS had a duty to ensure that Defendant ISRAEL fulfilled his duties and did not violate the constitutional rights of persons such as the Plaintiff PRIESTER.   Said Defendant abdicated its policymaking and oversight responsibilities, thereby allowing the incident involving the Plaintiff PRIESTER to occur.

50.     Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC. had a duty to train, supervise, control or otherwise ensure that the doctors and nurses under its control, including, but not limited to, Defendants MARTIN and FRANKOWITZ, did not violate the constitutional rights of persons such as the Plaintiff  PRIESTER.

12

51.     All Defendants were on notice of the unconstitutional conditions in the Broward County jail facilities, and each failed to rectify these conditions.

52.     The above acts and omissions of all Defendants, and each of them, constitute a course of conduct and failure to act amounting to negligence and/or deliberate indifference to the rights, health, safety and welfare of the Plaintiff PRIESTER and those similarly situated, resulting in the deprivation of his constitutional rights under state and federal law.

53.     Federal and state law, as well as accepted corrections practices at the time of the incident, provided "fair warning" to Defendants that their conduct was improper, incompetent, illegal and in violation of the Plaintiff's constitutional and state rights.

54.     The acts and omissions of the Defendants, as set forth above, violated clearly established and well settled federal constitutional rights of the Plaintiff PRIESTER, i.e., due process of law under the Fourteenth Amendment, and cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

55.     As a direct and proximate result of the acts and omissions of the Defendants as set forth above, the Plaintiff PREISTER suffered the following injuries and damages:

   A. Violation of his constitutional rights under the and Fourteenth Amendment to the United States Constitution;

   B. Loss of his life.

**COUNT I 42 U.S.C. §1983 CLAIM AGAINST DEFENDANTS MARTIN AND FRANKOWITZ**

56.     The Plaintiffs reallege paragraphs 1 through 55.

13

57.     At all times material hereto, the Defendants MARTIN and FRANKOWITZ, were responsible for screening incoming pre-trial detainees, assigning mentally ill pretrial detainees to the appropriate housing level, administering appropriate medication to the mentally ill, feeding these inmates and regularly monitoring and assessing the conditions of these inmates.

58.     While these Defendants were acting under color of state law as employees of Defendant ARMOR CORRECTIONAL HEALTH SERVICES,INC., they subjected the Plaintiff PRIESTER to the deprivation of rights and privileges secured to him under the Fourteenth Amendments to the United States Constitution.

59.     The slow and painful death of the Plaintiff was a reasonably foreseeable consequence of said Defendants' deliberate indifference to their obligation to provide appropriate medical care, sustenance, and medication for incarcerated mentally ill persons.

60.     Said Defendants breached their duty of care by failing to feed, assess, medicate, treat, and monitor the Plaintiff, despite their notice and knowledge of his mental illness and other serious medical conditions.

61.     The deliberate indifference of these Defendants violated the constitutional rights of all persons, including the Plaintiff PRIESTER, for which 42 U.S.C. §1983 provides a remedy.

62.     As a direct and proximate result of the violation of the Plaintiff PREISTER's constitutional rights by Defendants MARTIN and FRANKOWITZ, said Plaintiff suffered a horrible death.


**WHEREFORE**, the Plaintiff PRIESTER, through his Personal Representative

14

CEANIEL EDWARDS, demands compensatory and punitive damages against Defendants MARTIN and FRANKOWITZ, attorney fees, costs, and trial by jury for all issues so triable by right.

<h3 style="text-align:center"><strong>COUNT III STATE CLAIM FOR NEGLIGENCE AGAINST ARMOR CORRECTIONAL HEALTH SERVICES, INC. [1]</strong></h3>

72.     For the purposes of Count III the Plaintiff does not reallege any of the allegations in this Amended Complaint and as to the negligence claim against ARMOR alleges as follows.

73.     At all times material hereto, Defendant, ARMOR, owed the Plaintiff a duty to provide him with food and water.

74.     At all times material hereto, Defendant, ARMOR, by and through its agents or employees, breached its duty to give the Plaintiff food and water.

75.     At all times material hereto, Defendant, ARMOR, by and through its agents or employees, were aware that they had a duty to provide the Plaintiff with food and water and were also aware that the Plaintiff was being harmed because they were not providing him with food and water.

---

[1] Pursuant to this Court's Order of October 10, 2014 [DE 26] dismissing Count II with prejudice and dismissing Count III without prejudice and giving leave to amend Plaintiffs have removed Count II from the Amended Complaint and amended Count III. To avoid confusion and because the Defendants' have already answered Counts I, IV, V, VI, VII, VIII of the Original Complaint, the First Amended Complaint does not change the numbered paragraphs from the Original Complaint and only deletes Count II and amends Count III.

76.     As a direct and proximate result of the negligence of Defendant, ARMOR, Plaintiff, PRIESTER was starved to death over a 155 day period.

**WHEREFORE**, the Plaintiff PRIESTER, through his Personal Representative CEANIEL EDWARDS, demands compensatory and punitive damages against Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC.,, attorney fees, costs, and trial by jury for all issues so triable by right.

## COUNT IV 42 U.S.C. §1983 CLAIM - DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES, INC.

77.     The Plaintiffs realleges paragraphs 1 through 55.

78.     At all times materials hereto, Defendant ARMOR was responsible for adopting and implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, disciplining and assigning nurses and doctors to their duties prescribed by the contract they entered into with Defendant ISRAEL to provide comprehensive health and assessment services for inmates within the Broward County Jail System.

79.     Defendant ARMOR, as a service provider to the Broward County Sheriff's Office, had a duty to ensure that its employees abide by the terms of its contract and abide by the conditions that Defendants ISRAEL and BROWARD BOARD OF COUNTY COMMISSIONERS voluntarily agreed to with respect to the care, custody and control of inmates within the Broward County jail facilities.

16

80.     Said Defendant failed to comply with these obligations, as its employees, the Defendants MARTIN and FRANKOWITZ and others breached their duties and failed to properly screen, assess, monitor, medicate, feed, hydrate and treat the Plaintiff PRIESTER'S serious medical condition, causing his slow and horrible death.

81.     Defendant ARMOR failed to properly train and/or supervise its nurses and doctors in the screening, assessment, treatment, care and monitoring and/or supervision of pre-trial detainees.   Its doctor and nurse demonstrated deliberate indifference to the health and well-being of inmates such as the Plaintiff PRIESTER, by failing to conduct appropriate health screening, assessments, treatment, care, monitoring, medication, supervision and providing food and water to mentally ill inmates.  Said failure resulted in mentally ill inmates being malnourished, dehydrated, unmediated and neglected until they died or had other preventable poor health outcomes.

82.     Defendant ARMOR has maintained a system of review of the treatment of mentally ill pre-trial detainees and complaints thereof which has failed to identify the improper treatment by the nurses and doctors, and failed to subject nurses and doctors who improperly treat mentally ill pre-trial detainees to appropriate discipline, supervision, dismissal and/or retraining, to the extent that it has become the de facto policy and custom of said Defendant to tolerate the improper treatment of injured and/or ill pre-trial detainees at the Broward County Jail System.

83.     Defendant ARMOR, a for-profit company, has intentionally engaged in a practice of not sending inmates to outside medical providers for treatment of both mental health and non-mental health needs even when outside care is absolutely medically

necessary because the cost of sending inmates to an outside medical provider costs ARMOR money that decreases their profits.

84.     Defendant ARMOR acted in reckless disregard of both constitutional prohibitions and guarantees under color of state law, thereby misusing the power possessed by virtue of state law and made possible only because said Defendants were clothed with the authority of state law.

85.     The Plaintiff PREISTER has been a victim of the above mentioned illegal treatment of pre-trial detainees and said illegal treatment was the direct result of the previously described acts, omissions, policies or customs of said Defendant.

86.     The deliberate indifference of this Defendant violated the constitutional rights of all persons, including the Plaintiff, for which 42 U.S.C. § 1983 provides a remedy.

87.     Plaintiff PRIESTER suffered a slow and horrible death as a result of ARMOR'S actions.

        **WHEREFORE**, the Plaintiff PRIESTER, through his Personal Representative CEANIEL EDWARDS, demands compensatory and punitive damages against Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC., attorney fees, costs, and trial by jury for all issues so triable by right.

<u>COUNT V VICARIOUS LIABILITY FOR NEGLIGENCE</u>
<u>DEFENDANT SCOTT ISRAEL</u>

88.     The Plaintiff realleges paragraphs 1 through 55

89.     At all times material hereto, Defendant acted by and through his agents, employees and/or deputies.

90.     At all times material hereto, individuals employed in the Broward County

Sheriff's jail facilities acted within the course and scope of their employment with Defendant.

91.     At all times material hereto, Defendant, by and through his agents, deputies and/or employees, had a duty to provide inmates under its care, custody and control, with enough food and water to live.

92.     At all times material hereto, Defendant, by and through his agents, deputies and/or employees breached the duty to protect by, inter alia:

> (a.) failing to provide PRIESTER with enough food and water to live and be healthy;
>
> (b.) failing to maintain an adequate system whereby reports of inmate neglect are reported promptly and to appropriate persons, as proscribed or required by established administrative guidelines, policies or procedures;
>
> (c.) failing to provide and/or require adequate training for corrections deputies whose duty it was to supervise, care and protect the mentally ill inmates;
>
> (d.) other acts of negligence not yet discovered.

93.     As a direct and proximate result of the negligence of the agents, employees and/or deputies of Defendant ISRAEL, the Plaintiff PRIESTER died a slow and horrible death because he was neglected and ISRAEL, is vicariously liable as a matter of law.

**WHEREFORE**, the Plaintiff PRIESTER, through his Personal Representative CEANIEL EDWARDS, demands compensatory damages against Defendant ISRAEL, costs, and trial by jury for all issues so triable by right.

### COUNT  VI STATE CLAIM FOR NEGLIGENCE DEFENDANT SCOTT ISRAEL

94.   The Plaintiff realleges paragraphs 1 through 55

95.   At all times material hereto, Defendant, ISRAEL, owed Plaintiff a nondelegable duty to provide inmates in his custody with enough food and water to maintain health and life.

96.   At all times material hereto, Defendant, ISRAEL, by and through his agents or employees, breached his duty to provide inmates in his custody with enough food and water to maintain health and life by:

(a)   failing to provide PRIESTER with enough food and water to survive; and

(b)   allowing PRIESTER to lose 120 lbs when in his custody and die a slow and horrible death; and

(c)   Other acts of negligence not yet discovered.

97.   As a direct and proximate result of the negligence of Defendant ISRAEL, Plaintiff, PRIESTER, suffered a slow horrible death.

**WHEREFORE**, the Plaintiff PRIESTER, through his Personal Representative CEANIEL EDWARDS, demands compensatory damages against Defendant ISRAEL, costs, and trial by jury for all issues so triable by right.

### COUNT VII 42 U.S.C. § 1983 CLAIM - DEFENDANT ISRAEL

98.    The Plaintiff realleges paragraphs 1 through 55.

99.    At all times material hereto, Defendant ISRAEL was responsible for adopting and implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, disciplining and assigning deputies and/or corrections officers and/or employees to their duties within the Broward County Sheriff's Office.

100.    At all times material hereto, Defendant ISRAEL was responsible for adopting and implementing rules and regulations with regard to assessment, medical treatment, housing, and monitoring of pre-trial detainees.

101.    Said Defendant was deliberately indifferent to his duties in that he either expressly or impliedly acknowledged and assented to the failure to train, supervise, control or otherwise screen employees of the Broward County Sheriff's Office, including but not limited to Defendants ARMOR, MARTIN and FRANKOWITZ for dangerous propensities, lack of training and/or skill or other characteristics making said officers and employees unfit to perform their duties at the Broward County Jail facilities.

102.    The Defendant ISRAEL was aware of the problems and conditions existing in the Broward County Jail System such as inadequate manpower, monitoring, classification, screening, assessment, medical care and medication of mentally ill inmates.

103.    The Defendant ISRAEL was deliberately indifferent to the safety of the inmates by failing to remedy these problems, even though he had notice of them.

104.    The Defendant ISRAEL'S deliberate indifference to these problems caused a substantial risk of harm to the Plaintiff and other inmates housed in Broward County Jail facilities.

105.     The Defendant ISRAEL has failed to properly train, and/or supervise his deputies and/or corrections officers and/or employees and/or agents in the treatment, care, and housing of mentally ill pre-trial detainees.  Despite clear warnings, his officers, agents and/or employees have failed to adequately monitor, classify, screen, assess, house, feed and/or protect mentally ill pre-trial detainees.

106.     The conduct of Defendant ISRAEL in his failure to train, supervise and/or discipline his deputies and/or corrections officers and/or agents and/or employees, was deliberately indifferent to the constitutional rights of all persons, including the Plaintiff PRIESTER.

107.     Defendant   ISRAEL   abdicated   his   policymaking   and   oversight responsibilities, thereby allowing the deputy sheriffs/corrections officers and/or agents and/or employees to ignore the requirements of law and the policies of the Broward Sheriff's Office.

108.     The Defendant ISRAEL has maintained a system of review of the treatment, care, security and housing of the mentally pre-trial detainees, and complaints thereof, which has failed to identify the improper treatment and neglect by his officers and/or agents and/or employees and to subject officers and/or agents and/or employees who fail to properly classify, monitor, treat, assess, medicate, protect, feed and house mentally ill pre-trial detainees in need of appropriate discipline, supervision, dismissal and/or retraining, to the extent that it has become a de facto policy and custom of Defendant ISRAEL to tolerate the improper treatment, neglect and housing of mentally ill pretrial detainees such as Plaintiff.

22

109.     The foregoing acts, omissions, policies or customs of Defendant ISRAEL caused deputies and/or corrections officers and/or agents and/or employees to believe there exists no meaningful duty to properly classify, monitor, treat, assess, medicate, protect, feed and house mentally ill pre-trial detainees, with the foreseeable result that deputies and/or corrections officers and/or agents and/or employees are likely to ignore special needs of the mentally ill pre-trial detainees and endanger the safety and lives of inmates such as Plaintiff, thereby risking their safety and continued life by neglecting them.

110.     The deliberate indifference of this Defendant violated the constitutional rights of all persons, including the Plaintiff, for which 42 U.S.C. §1983 provides a remedy.

111.     The above acts and omissions of Defendant ISRAEL constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and welfare of the Plaintiff and those similarly situated, resulting in the deprivation of the Plaintiff's constitutional rights under state and federal law.

112.     The foregoing acts, omissions, policies or customs of Defendant ISRAEL caused deputies and/or corrections officers and/or employees to believe there exists no duty to properly assess, treat, care for, feed and house injured and/or ill pre- trial detainees, with the foreseeable result that deputies and/or corrections officers and/or employees are more likely to improper treat, care for, neglect and house the inmates, thereby risking their safety and continued life.

113.     The Plaintiff PRIESTER has been a victim of the above-mentioned illegal treatment of pre-trial detainees and said illegal treatment was the direct result of the previously described acts, omissions, policies or customs of Defendant ISRAEL.

114.     As a direct and proximate cause of the acts described above, the Plaintiff PRIESTER died a slow and horrible death.

**WHEREFORE**, the Plaintiff PRIESTER, through his Personal Representative CEANIEL EDWARDS, demands compensatory and punitive damages against Defendant ISRAEL, attorney fees, costs, and trial by jury for all issues so triable by right.

## COUNT VIII 42 U.S.C. §1983 CLAIM AGAINST THE BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS

115.     The Plaintiff realleges paragraphs 1 through 55.

116.     With respect to the duties and powers of the Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS, said Defendant failed in all aspects with regard to control of the Defendant ISRAEL.

117.     At all times material hereto, the Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS permitted and tolerated a pattern and practice of abuse of lawful authority, in reckless disregard of both constitutional prohibitions and guarantees under color of state law, thereby misusing the power possessed by virtue of state law and made possible only because Defendants were clothed with the authority of state law.  As a result, some Broward County Sheriff's Office deputy sheriffs and/or corrections officers and/or agents and/or employees were caused and encouraged to believe that members of the public such as pre-trial detainees could be subjected to abuse of lawful authority and that said abuse would in fact be permitted by the Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS.

24

118.     The acts of Defendant ISRAEL represent an official policy of BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS in that the policy making authority for the County has been delegated to Defendant ISRAEL.

119.     The Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS has maintained no meaningful system of review of incidents involving abuse of lawful authority and complaints thereof, and, therefore, has failed to identify incidents of abuse of lawful authority by said law enforcement officers and/or agents and/or employees, and to subject said law enforcement officers and/or agents and/or employees to appropriate discipline, dismissal, closer supervision and/or retraining, to the extent that it has become the de facto policy and custom of BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS to tolerate the abuse of lawful authority by deputy sheriffs and/or corrections officers and/or agents and/or employees.

120.     The deliberate indifference of this Defendant violated the constitutional rights of all persons, including the Plaintiff, for which 42 U.S.C. §1983 provides a remedy.

121.     As a direct and proximate cause of the acts described above, the Plaintiff PRIESTER died a slow and horrible death.

**WHEREFORE**, the Plaintiff PRIESTER, through his Personal Representative CEANIEL EDWARDS, demands compensatory damages against Defendant BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS, attorney fees, costs, and trial by jury for all issues so triable by right.

Dated:          October 20, 2014                    Respectfully submitted,
                Fort Lauderdale, Florida

ATTORNEYS                     FOR
PLAINTIFFS

Greg Lauer, Esq.
Lauer & Currie, P.A.
644 Se 5 Avenue
Fort Lauderdale, Fl 33301
Phone:(954) 533-4498
Facsimile:   (954) 533-4501


By:     S/Greg M. Lauer
         Greg M. Lauer
         Fla. Bar No. 652709
          *greg@law-lc.com*

Christina    Currie,    Esq.
Lauer & Currie, P.A.
644 Se 5 Avenue
Fort Lauderdale, Fl 33301
Phone:(954) 533-4498
Facsimile:   (954) 533-4501


By:  S/Christina M. Currie
         Christina    M.    Currie
Fla. Bar No. 90987
          *cmc@law-lc.com*