UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 14-CV-61577-BLOOM/VALLE**

CLEANIEL EDWARDS, as personal
representative of the estate of
Raleigh Priester, *et al.*,

    Plaintiffs,

v.

ARMOR CORRECTIONAL HEALTH
SERVICES, INC., *et al.*,

    Defendants.
_____/

**ORDER DENYING DEFENDANT ARMOR
CORRECTIONAL HEALTH SERVICES, INC.'S EMERGENCY
MOTION FOR RECONSIDERATION OF THE COURT'S ORDER ON JULY 6, 2015**

    THIS MATTER is before the Court on Defendant Armor Correctional Health Services, Inc.'s ("Armor") Emergency Motion for Reconsideration of the Court's Order on July 6, 2015 (ECF No. 73). The Court has reviewed the briefing on the motion, the applicable law, and is otherwise duly advised in the premises. For the reasons set forth below, Armor's Motion is **DENIED**.

**BACKGROUND**

    This lawsuit arises under 42 U.S.C. § 1983 and Florida's Wrongful Death Statute. *See* First Amended Complaint (ECF No. 29). Plaintiffs are the estate and family members of Mr. Raleigh Priester, a former inmate at the Broward County Jail. Plaintiffs allege that Mr. Priester was arrested on February 6, 2012 (weighing 240 lbs.) and died in jail five months later, on July 10, 2012 (weighing 120 lbs.). *Id.* ¶ 1. Plaintiffs claim that Defendants allegedly failed to

provide Mr. Priester with adequate nourishment, medical care and treatment, resulting in his death.

On February 2, 2015, Plaintiffs served their Second Request for Production on Armor. (ECF No. 53-1). Request Number 7 stated:

> Page 21 at section "V" titled "Comprehensive Quality Improvement" in the 2009 contract between [Broward Sheriff's Office] and Armor . . . requires in subsection number 5 to, "review findings from any mortality review and recommend correction action when indicated." Please produce any all documents related to any mortality review and recommended corrective action from January 1, 2010 to December 31, 2013.

(ECF No. 53-1 at 4). Armor responded to Request Number 7 as follows:

> Objection. As it pertains to the "review findings" of Mr. Priester's death, Work-Product Privilege. Please see Defendant's Privilege Log filed contemporaneously hereto. As it pertains to other "review findings from any mortality review and recommend correction action when indicated", objection, not reasonably calculated to lead to the discovery of admissible evidence, and is therefore not discoverable pursuant to Fed. R. Civ. P. 26(b)(1).

(ECF No. 53-6 at 3).

Plaintiffs then moved to compel Armor's response to Request Number 7. (ECF No. 53). After a hearing, the Court granted Plaintiffs' motion and ordered Armor to respond to Request Number 7. (ECF No. 70 at 2). Specifically, the Court ordered Armor to provide Plaintiffs with the 2011, 2012, and 2013 mortality review findings by July 20, 2015. *Id.*

One week after the Court's order, on July 13, 2015, Armor filed the instant "emergency" motion for reconsideration of the Court's order on Plaintiffs' motion to compel.[1] (ECF No. 73). As grounds, Armor now argues for the first time—and despite ample opportunity to raise this

---

[1] Although the motion was not a true emergency and Armor failed to comply with Section 5E of the Court's CM/ECF Administrative Procedures regarding emergency motions, the Court nonetheless ordered expedited briefing on the motion because the document production was due on July 20, 2015. (ECF No. 74).

2

argument in response to the request for production, in response to the motion to compel, and during the lengthy hearing on the motion—that its mortality review findings are privileged from disclosure under Florida Statutes § 766.101(5). *Id.* at 2. Specifically, § 766.101(5) provides in part:

> The investigations, proceedings, and records of a committee . . . shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee . . . .

Fla. Stat. § 766.101(5). Armor now claims—without explanation or evidentiary support—that this statutory privilege applies to its mortality review findings "because it has a duly authorized medical review committee that performs mortality reviews within its facility."[2] (ECF No. 73 at 3).

In response, Plaintiffs challenge Armor's unsupported claim that the Comprehensive Quality Improvement Committee is a "committee" within the meaning of § 766.101(5) and that the statutory privilege applies to its mortality review findings. (ECF No. 75 at 4). Moreover, Plaintiffs argue that even if Armor's Comprehensive Quality Improvement Committee is a "committee" and the statutory privilege applies, article X, section 25 of the Florida Constitution ("Amendment 7") preempts the privilege, thereby rendering Armor's mortality review findings discoverable. *Id.* at 1-4.

---

[2] In fact, nowhere in Armor's motion does it ever identify the actual "committee" to which it is referring, let alone explain how that committee falls under any of the definitions of "committee" in § 766.101(1)(a). *See* (ECF No. 73). Rather, it is not until Armor's reply that Armor first begins to explain that it "is a Florida corporation organized under Chapter 607 that was formed and is operated for the practice of medicine with at least twenty-five health care providers who routinely provide health care services directly to patients in jail," and therefore the Comprehensive Quality Improvement Committee is a "committee" within the meaning of § 766.101(1)(a)(1.f.). (ECF No. 76 at 3).

3

**DISCUSSION**

As Florida's Second District Court of Appeal has recently explained, "Florida law contains statutory privileges that provide for the confidentiality of health care facility or provider peer review as conducted by a medical review committee or governing board of licensed hospital facilities." *Bartow HMA, LLC v. Edwards*, No. 2D14-3450, 2015 WL 4154180, at *2 (Fla. 2d DCA July 10, 2015) (citing, among other things, Florida Statute § 766.101(5)). "Those provisions protect "any document considered by the committee or board as part of its decision-making process." *Id.* (internal quotation marks and citations omitted).

Amendment 7, however, "preempts the statutory discovery protections for the peer review process . . . by providing patients a right of 'access to ***any records made or received in the course of business*** by a health care facility or provider ***relating to any adverse medical incident***.'" *Id.* (quoting Amendment 7) (emphases added). An "adverse medical incident" includes "incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees." Art. X, § 25(c)(3).

Therefore, assuming that Armor's Comprehensive Quality Improvement Committee is a "committee" within the meaning of § 766.101(5), the resolution of Armor's motion for reconsideration hinges on whether Armor's mortality review findings are "records made or received in the course of business." Art. X, § 25(a); *see also* (ECF No. 75 at 3) and (ECF No. 76 at 2). If Armor's mortality review findings are ordinary business records, then Amendment 7 preempts their statutory protections and renders the records discoverable. However, if the mortality review findings are not ordinary business records, then their statutory protections remain in full force and effect.

Armor claims that its mortality review findings are not created in the ordinary course of business, but rather are "specifically created, maintained, and kept in anticipation of litigation." (ECF No. 76 at 3). The Court, however, has already rejected this very argument. Indeed, during the hearing on Plaintiffs' motion to compel, the Court rejected the argument that Armor's mortality review findings are work product created in anticipation of litigation. Instead, the Court found that Armor's contract with BSO obligated Armor to create the mortality review findings as part of its business of providing healthcare services to inmates. In fact, the contract between BSO and Armor provides in part that:

> [Armor] shall develop a comprehensive quality improvement program of regularly scheduled audits of all Inmate health care services provided under this Agreement, documentation of deficiencies, and plans for correction of deficiencies. The quality improvement plan shall include a provision for program and contract monitoring (peer review) by one or more "outside" detention health care consultant(s) on an annual basis. The results of the outside consultant's review(s) shall be provided to the SHERIFF or designee . . . . The Comprehensive Quality Improvement Committee shall have the following functions and responsibilities: . . . 5. Review findings from any mortality review and recommend corrective action when indicated . . . .

(ECF No. 1-10 at 22) (emphasis added).

Accordingly, the Court once again concludes that Armor's mortality review findings are ordinary business records and thus fall within the ambit of Amendment 7. The mortality review findings, therefore, are not protected from disclosure under § 766.101(5).

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Armor's Emergency Motion for Reconsideration of the Court's Order on July 6, 2015 (ECF No. 73) is **DENIED**. Armor shall produce the responsive mortality review findings no later than **12:00 p.m. on July 22, 2015**. However, consistent with Amendment 7, "the identity of patients involved in the

incidents shall not be disclosed, and any privacy restrictions imposed by federal law shall be maintained." Art. X, § 25(b).

      **DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, on July 21, 2015.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Beth Bloom
All Counsel of Record